JOHN R. VAN HOUTEN and others *vs.* ALEXANDER MCKELWAY and others, Trustees of the First Reformed Dutch Church of Totowa, and others.

1. Where the pews in a church have been purchased and a title given to the purchaser, he has but a qualified interest. His right is subject to that of the trustees or owners of the church, who have the right to take down, rebuild, or remove the church for the purpose of more convenient worship, without making any compensation to the pew-holders for the temporary interruption.

2. A court of equity will not, on the application of a pew-owner, enjoin the pulling down and rebuilding, or removal of the church edifice by the trustees, whenever it shall be found expedient and proper. Nor will it affect the question, that the application is made by a majority of the church and congregation entitled to vote at its congregational meetings.

3. The common law right of alienation by religious corporations has not been restrained in this state by statute.

4. The real and personal estate of a religious corporation is trust property, not to be controlled by the will of the *cestuis que trust*, much less by

Van Houten *v.* First Reformed Dutch Church.

a bare majority of them, but by the trustees, the duly constituted guardians of the rights and interests of the congregation.

5. The Court of Chancery is vested with the same jurisdiction over corporate trusts that it ordinarily possesses and exercises over other trust estates. It will guard jealously against any perversion of the trust funds by the corporation, and will hold the trustees personally responsible for a breach of trust.

6. Where the material charges of the bill are fully denied by the answer, an injunction will not be granted, even though the bill disclose clear ground of equitable relief.

*Mr. A. S. Pennington,* for defendants, in support of the motion, cited *Nix. Dig.* 723, § 11–12–13–14; *Magie* v. *German Evang. Dutch Church,* 2 *Beas.* 77; *Den* v. *Bolton,* 7 *Halst. R.* 206; *Nix. Dig.* 722, § 4; *Ibid.* 724, § 17.

*Mr. Woodruff* and *Mr. P. D. Vroom,* for complainants, contra, cited *Scott* v. *Ames,* 3 *Stockt.* 261; 2 *Story's Eq. Jur.,* § 1268, § 1276; *Doremus* v. *Dutch Reformed Church,* 2 *Green's Ch. R.* 346; *Hill on Trustees,* 42, 555, 562–3; *Hendrickson* v. *Decow, Saxton* 600; *Hopkins* v. *Hopkins,* 1 *Atk.* 424; *King* v. *Donnelly,* 5 *Paige* 46; *In the matter of Van Schoonhoven, Ibid.* 559; *Brown* v. *Vandyke,* 4 *Halst. Ch. R.* 799; *Kean* v. *Johnson,* 1 *Stockt.* 408; *Rex* v. *Mayor of Rippon,* 2 *Salkeld* 433; *S. C.,* 1 *Ld. Raymond* 563; *State* v. *City of Newark,* 3 *Dutcher* 198; *United States* v. *Wright,* 1 *McLean* 509.

THE CHANCELLOR. The complainants' bill in this cause is exhibited by members of the congregation of the First Reformed Dutch Church of Totowa, in the city of Paterson, and pew-holders in said church, claiming to be a majority of the members of said church and congregation, entitled to vote at its congregational meetings.

The complainants seek a perpetual injunction to restrain a sale by the corporation, of the church in which the congregation worship, together with the lot on which the same is erected.

It is a pure injunction bill. It asks no other relief save

a perpetual injunction, restraining the defendants from a sale of the premises.   On filing the bill, a temporary injunction was issued.   The defendants having answered, now move to dissolve the injunction.   The answer furnishes a statement of the grounds upon which the defendants are proceeding to a sale of the present church edifice and the erection of a new one, and a history of· the difficulties out of which the present controversy has arisen.

Before considering the defence made by the answer, it is necessary to examine the case made by the bill itself, to determine whether there be any equity in the bill, or any ground upon which the prayer for injunction can be sustained.

The first ground upon which relief is asked is, that the complainants, or some of them, have rights in the present church edifice which will be impaired or sacrificed by a sale of the property.   The claim is founded upon an instrument bearing date on the fifth day of September, A. D. 1831, purporting to have been made by the First Reformed Dutch Church of Totowa, and to be executed under their corporate seal, and the signature of their president, and which the bill alleges was the contract of the corporation.   By the instrument it is recited, that the church had purchased a lot in the city of Paterson, that a large sum of money had been raised by subscription, for which pews in the church erected on the said lot had been taken; that at a meeting held on the 18th of April, 1831, it was by the congregation of said church, among other things, resolved unanimously, that The First Reformed Dutch Church of Totowa sign an instrument of writing of the following import, viz. that if the new church should burn down and the ground lots should be sold, then the money thence arising should be returned to the signers and payers of the following subscription list (which list was thereto annexed) and to those who had at the first vendue purchased and paid for pews in the church, and who should · thereafter purchase and pay for pews in the church, according to and in proportion to the original purchase money and sums subscribed.

Van Houten *v.* First Reformed Dutch Church.

And it was in and by the said instrument stipulated, that if the new church erected on the said lot should burn down, and the ground lots should be sold, that then the church would divide the surplus money arising from such sales, after paying the debts of the church then contracted, or which the church might thereafter contract, amongst those who had purchased, or who should thereafter purchase pews in said church, and pay for the same to the value of said pews at the time of purchasing them; and if any of those who had subscribed towards the building of the church, and had paid the amount thereof, or who should thereafter pay the amount thereof, and should not take pews for the same, they should be entitled to be paid equally with the rest. And if there should not remain money enough, after paying the debts of the church, to pay the above amounts in full, then the persons so subscribing and paying, should come in for a dividend of said surplus money, to be made ratably, in proportion to the amounts they shall have severally paid.

The contract provides for one contingency only, viz. the burning down of the church and the sale of the ground lots. Both the resolution of the congregation and the terms of the contract look to that contingency alone, and to no other. The complainants allege that the object and intention of the agreement was, that the lots should be considered as belonging to the subscribers and contributors to the erection of the church and the owners of the pews, and that if sold, the proceeds of the sale should be divided among them, and not be appropriated to any other purpose.

The intention of the parties to the contract must be sought for in the terms of the instrument itself, and those terms must be understood and construed according to their natural import.

The construction asked by the complainants to be put upon the contract, is in direct conflict with its terms. The title to the land was in the corporation. The trustees were invested with the legal title in fee, in trust for the purposes of the corporation. There is in the contract no intimation

of a purpose or design to interfere with their legal ownership in, or control over the property. There is no restraint upon their right to sell or dispose of it as they should deem proper and for the interests of the congregation; no intimation that the trustees should not remove the church to a more convenient or advantageous locality. No such inference can by possibility be drawn from the terms of the instrument. The agreement gives to the subscribers and pewholders no title to the land, and no interest in it. They are entitled only to the proceeds of the sale of the lot, and to those, only after all the debts then contracted or which the trustees might thereafter contract, should be paid and satisfied. It gives to the complainants, or to the subscribers and pew-holders, a right to the proceeds of the sale of the lot, only upon the contingency of the destruction of the building by fire. It furnishes no ground for relief under the circumstances disclosed by the bill.

But if it be admitted that in case of the sale of the property in its present condition, the subscribers and pew-holders by force of the agreement, would be entitled to the proceeds of the sale, it would give them no right in equity to interfere with the right of the trustees to sell or encumber the premises. All that they could ask would be their ratable proportion of the proceeds of the sale of the lot. On this ground it is very clear that the bill furnishes no title to relief.

Where the pews in a church have been purchased and a title given to the purchaser, he has but a qualified interest. His right is subject to that of the trustees or owners of the church, who have the right to take down, rebuild or remove the church for the purpose of more convenient worship, without making any compensation to the pew-holders for the temporary interruption. *Freligh* v. *Platt*, 5 *Cowen* 496; *Shaw* v. *Beveridge*, 3 *Hill* 26; *Heeney* v. *St. Peter's Church*, 2 *Edw. Chan. R.* 612; *In the matter of the Brick Presb. Church*, 3 *Edw. Ch. R.* 155; *Wentworth* v. *First Parish in Canton*, 3 *Pick.* 344; *Howard* v. *First Parish in North Bridgewater*, 7 *Pick.* 138.

And a court of equity will not, on the application of a pew-owner, enjoin the pulling down and rebuilding or removal of the church edifice, by the trustees, whenever it shall be found expedient and proper. *Heeney* v. *St. Peter's Church*, 2 *Edw. Ch. R.* 608; *In the matter of the Brick Presb. Church*, 3 *Edw. Ch. R.* 155.

Another ground of relief relied on by the complainants is, that they constitute a majority of the church and congregation entitled to vote at its congregational meetings. To whatever degree of consideration this fact might be entitled, in considering the expediency or propriety of a sale, it can constitute no distinct ground of relief.

At common law every corporation aggregate had power to alien or dispose of its lands in fee, or to create any lesser estate therein, unless restrained by their charter or by statute. 2 *Kent's Com.* 280; *Angell & Ames on Corp.*, § 187; *Co. Litt.* 44 *a*—300 *a. b.*; *Trelawney* v. *Bishop of Winchester*, 1 *Burrow* 221; *Dutch Church* v. *Mott*, 7 *Paige* 83. This common law right of alienation by religious corporations has not been restrained in this state, as it has been in England, by statute. Nor is the power of alienation clogged, as in England, by the vesting of the legal title to the church and church lands in the parson, a corporation sole, not having the absolute fee, having no power even of leasing the property beyond his own life, and whose grant must be confirmed by the patron and ordinary. *Co. Litt.* 300 *a. b.*

By the statute of this state, every corporation has power to hold, purchase, and convey, such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter. *Nix. Dig.* 151, § 1.

And by the act incorporating the trustees of religious societies, the trustees, by their name of incorporation, are authorized to acquire and hold lands and chattels, in trust for the use of the society or congregation, to an amount in value not exceeding $2000 a year, and the same or any part thereof, to sell, grant, assign, demise, alien, or dispose of. The same power is by the act conferred specially upon the trustees of

the Reformed Dutch churches. *Nix. Dig.* 722, § 3; 723, § 13. The power of holding, controlling 'and disposing of the real as well as the personal estate of the corporation is conferred, not upon the congregation or society at large, but upon the trustees by their name of incorporation. It is trust property, not to be controlled by the will of the *cestuis que trust*, much less by a bare majority of them, but by the trustees, the duly constituted guardians of the rights and interests of the congregation, and who are responsible for the faithful discharge of their duty.

The Court of Chancery is vested with the same jurisdiction over corporate trusts, that it ordinarily possesses and exercises over other trust estates. 2 *Kent's Com.* 280.

It will guard jealously against any perversion of the trust funds by the corporation. It will hold the trustees personally responsible for a breach of trust. But there is in this bill no allegation that any breach of trust or perversion of the trust property has been committed or meditated by the trustees. It is not alleged or suggested that they are about to sell the church to appropriate the proceeds to an unlawful purpose, or to deprive the congregation of a place of worship, or from any sinister or corrupt motive to remove the church to an improper locality.

The gravamen of the bill is not that the rights of the *cestuis que trust* will be impaired, or that the interests of the congregation will be prejudiced by the proposed change, but that the pecuniary interests of the complainants, or of some of them, will be injuriously affected. It has already been said that the complainants have no legal rights in the church edifice, which will be protected by the restraining power of this court.

Whether the interests of the church and congregation require that the church should be removed to another locality, is a question which the authorities of the state and of the church have wisely committed to the judgment and discretion of its board of trustees. In the Reformed Dutch Church in this state, the trust has been delegated to the consistory,

a body consisting of the pastor, deacons, and elders of the church, the guardians at once of its spiritual and temporal interests. I know not where the trust could be more wisely or safely lodged. And it would be, in my judgment, an un-authorized exercise of power, and one dangerous to the peace and welfare of the church, if a civil tribunal, at the instance of any portion of the congregation, however respectable, should wrest from the consistory the exercise of its acknow-ledged powers, upon the mere allegation that a majority of the congregation differed from them in judgment.

There is, in my opinion, no ground upon which this in-junction can be sustained, and no equity in the complainants' bill. The temporary injunction must, therefore, be dissolved and the bill dismissed.

Owing to the importance of the principles involved, I have felt it my duty to dispose of the cause upon the case as made by the complainants' bill. I deem it due to the parties in-terested to add, that if I had arrived at a different conclusion in regard to these questions, and had been satisfied that the complainants had, by their bill, disclosed clear ground of equitable relief, the injunction must, nevertheless, have been denied, inasmuch as the material charges of the bill are fully denied by the answer.